Good morning, Mike Mays on behalf of Appellant Blumenthal. In this particular case, we have an appliant, a police officer, who offers to the magistrate, as part of the search warrant, an uncorroborated statement of a 14-year-old. Counsel, let me tell you what's on my mind in this case so you can educate me if I'm mistaken. My thought was you're relying on authority that says evidence that somebody is a pedophile isn't probable cause to search everything in his house for dirty pictures of children. But in this case, what you have is something a little different. It's evidence that a person was looking at images of naked children on his computer live rather than transmitted. And I'm thinking that that is distinguishable and would be evidence that he likes to look at those kind of pictures on his computer, so he probably has some there. What am I misunderstanding? Well, as I view it, as I indicated, my view is that this is the uncorroborated statement of a 14-year-old. There was potential corroboration. Apparently, the 14-year-old had stated to the officer that he had taken photographs of this setup. And in my view, giving some substance to the way this officer drafted this affidavit, he gives the impression, he, the officer, gives the impression that he saw the photographs and viewed them and, in fact, corroborated the minor's statement. In fact, there is a close – There isn't any rule that the 14-year-old needs corroboration to furnish probable cause, though, is there? No, but it gives some substance to believing the minor. And that gives more credence or more substance to the magistrate in his analysis of the affidavit. I was thinking the kid identifies himself to the cop and gives a full enough account of what happened so that it's not like just an anonymous tip on the phone. That's true. And it probably doesn't need corroboration. Right. And I didn't argue corroboration as an element to attack the probable cause. I offered it for two reasons. The primary reason was to show the lack of candor, in my view, of the affiant and his ability to be maybe a little bit cagey with the language, to give impressions that he can't prove. And the problem is, as I see it, is one of logic. The statement of the boy is enough, in my view, to create a suspicion, certainly in the officer's mind, which would warrant further investigation. What the officer does is he makes a little further investigation. And in that, to a cousin, it gives some credence to the 14-year-old's statement. Of course, we don't know if the 14-year-old was how much of the facts he knew from his cousin previously that may have allowed him to structure his statement to the officer. But the problem is this. The problem is this, is that the officer's conclusion that he will find child pornography at that location is not supported by the statement from the 14-year-old. Basic logic 101 talks, when you talk in terms of conclusions, there must be something in the premise that follows to the conclusion. In this particular case, there is no, there's nothing in the premise that's offered by the 14-year-old which suggests that there's child pornography in that location. The defendant or the appellant doesn't talk about child pornography, doesn't suggest it. Well, I thought what you were saying was if the kid's got 35-millimeter pictures, why not attach them to the affidavit to show the policeman that this is true? But what you're saying is a little different. It's just because the man looks at the boy taking a shower in the bathroom, it doesn't mean that the man would have child pornography on the computer. And I'm thinking, wait a minute, he just did look at images on his computer of the naked boy. So he had child pornography on his computer at that moment. Why not think he'd have more? Well, that's the inference that he looked at, pornography, something that created a sexual interest on his behalf. All we've got is the inferences from the ---- What's the alternative? I think what he said is he has the camera in the bathroom to prevent burglaries? Well, for security purposes. What's security in a bathroom? I mean, it's not where you keep your guns and cameras. Well, but it's an easy access. People leave their bathroom windows open. Burglars certainly go through bathroom windows. They go through any open access. I don't know about you, but when I take showers, I get steam in there. Bathroom window on the second floor? I'm sorry? Bathroom window on the second floor? Yes. Well, there's cameras there because of the moisture, right? Oh, you're saying somebody could sneak in. Sure. I mean, it's not implausible, and there's certainly ---- I've represented enough burglars, and second stories, third stories, and higher are not out of the question. They look for easy access, easy entrances, and obviously the building didn't come in, but ---- What about the evidence that the boy walked in there, and there's a picture of himself on the computer screen naked in a ---- No. Well, that's not the way I understood it. What he walked ---- what he saw was a picture of the bathroom, a live ---- what he considered to be a live picture of the bathroom, and there was no ---- there was nothing to suggest or to prove that, in fact, it was a live picture as opposed to a still picture that had been taken earlier. The boy draws the entrance. You're right. Live shot of the bathroom. Yes. Well, what about all the squeegee business and the fact of his cousin's statement? Are you saying we should disregard the cousin who saw? No. Again, that's that all ---- On the computer. I'm sorry. I mean, the cousin says, I saw ---- I went down and I saw my friend who was taking a shower live on the computer screen. How do you deal with that statement? What's interesting about that is the absence or the location of the defendant at the time. There's no indication that the defendant was in the room viewing the friend. There's no indication the defendant was even in the house at the time. And it's also consistent with security purposes. What about this hearsay, which I guess can be considered in a search warrant affidavit, that when his cousin stayed there with his friend, the cousin looked at the television and saw a live shot of his friend getting out of the shower? Yes. That looks to me like an image on the computer of a naked boy. And it's hard to see why anyone want to ---- why the adult would be looking at it under these circumstances. Well, I thought I addressed that with Judge Wardlaw was that there was no statement by that. First, it was on a TV, as I understand it, a TV screen, not a computer. Secondly, it's ---- there was no statement that the defendant was in the room viewing this and there was no statement that the defendant was even in the house at the time. Again, that's not a consistent ---- It's hearsay about another occasion. Yes. It's simply ---- well, even if it's believed, even if it was true, it doesn't suggest that that camera was in there for pornographic purposes, much less that the defendant was viewing it or taking it. There was no indication that the live on either, that the live viewing of the bat was being kept or preserved or memorialized in any way on tape. Certainly, security systems and the eight and the affine even says, look, I'm familiar with this gentleman from his business, and he uses those types of things for security in his business. So this is not ---- and there's no suggestion that there was any untoward activity going on at the business. Where is it that I should look for the security explanation? I've been thinking about it since you said that. I'm trying to think. The idea of somebody coming in through the second story didn't ---- Yes. On page 29 of my excerpts, it's in the statement of probable cause. I see. And it's the last or the second to the last paragraph. I see. So you're saying that next to the last paragraph is actually evidence against the search warrant rather than for one, because it shows that the man is concerned with security. Yes. I think it's consistent with cameras for security. Yes. So the lack of, in my view, the lack of a logical connection between the conclusion and the premise is actually, I think, what the Weber case is talking about. Basically, the Weber case, as I understand it, says that ---- and actually, in our case, it's even stronger. In Weber, at least there was some argument, some factual basis to believe that Weber, Mr. Weber, actually had an interest in child pornography. And the Weber court said, you know, even if he has an interest, that's not enough to go in there and execute a search warrant. Yes, but Weber, the search warrant was executed solely on the basis of expert testimony. It wasn't directed specifically at the actual conduct of the defendant, was it? I mean, here we had some expert testimony, but we also had these witness statements. Well, I think that the fact that the Mr. Weber actually apparently was willing to, in the Sting operation, to accept child pornography is conduct, which is conduct. The first part of the Weber where they sent him or pornography was addressed to him and he didn't go out there and pick it up, I wouldn't characterize that as conduct. Obviously, or if anything, it's conduct in rejecting the ---- but the second part, I think, is conduct, which clearly suggests that he has an interest in child pornography. We don't have that in this particular case. What we have basically, in my view, again, it's my view, is the officer saying, look, trust me. And trust me because, geez, you know, I've had some classes and I've actually investigated child abuse cases. I've investigated sexual assault cases. None of those two circumstances obtained in this particular set of facts. And I've investigated child pornography. Did that even matter? When I read the affidavit, I thought it was superfluous. It didn't influence my own judgment on it at all that the policeman says, oh, I know all about pedophiles. Well, actually, Your Honor, I respect that because I agree with you. It adds nothing to this. But I think that's what struck me is the policeman is just saying common sense. People who like to look at people who are sexually aroused by children and who are male are going to want to look at sexually arousing pictures of children. It would seem like common sense. And in this particular case, just to be fair, there's nothing in the statement of the 14-year-old that suggests even remotely, that Mr. Blumenthal was in any state of sexual arousal. Well, the part that, see, I thought there was probable cause before I got to the policeman's claim of expertise. I thought there was probable cause because he told the boy only use the upstairs bathroom. Every one of the five times he did, the man said, I want to check my e-mail. He told him to be sure to use a squeegee. And then when the boy says he used the squeegee, the man says, I know you did. And when the boy goes into the computer room, he sees a little window with a live shot of the bathroom on the computer screen. And the boy discovers a motion detector in the bathroom. And the cousin told him that when he had been there, he could see a live shot of the bathroom on the television. I know you're saying the television is different, but gosh, you can get a gadget to run your computer picture onto the TV screen. That's not very hard. Well, as I indicated, those statement of facts, to me, clearly create a suspicion upon which the officer should have further investigated. In my view, it doesn't rise to the level of probable cause. Thank you. Thank you, counsel. May it please the Court. Sally Malik on behalf of the Plaintiff Appellee. The issue here, Your Honor, is that whether the Court erred in denying the motion to suppress. And the government believes there's more than sufficient probable cause to find that the defendant here had a sexual interest in the juvenile males, that he was capturing images on his computer, and that it would be likely and reasonable to find those images on his computer. I'd like to address a couple of issues raised by defense counsel. He argued that there was really no corroboration for the minor. However, the government's position is that there was corroboration. The 14-year-old male gave a description of having used the bathroom and having seen the images of the bathroom on the computer. Counsel, I've been racking my brains trying to think of some security interest in the bathroom. And I think I might have thought of one, but I don't know if there's any validity to it. There is this paragraph that says that he uses this as his place of business and that it's a closed-circuit security camera. And I was thinking, I once saw a movie where a dope addict goes into the bathroom, opens the medicine chest, and puts all the medicines that may have some kind of dope in them in her purse. That's the only thing I've been able to think of so far. The second story man idea didn't have much persuasive value for me anyway. And that was just a movie. It's not real. Is there any ---- I don't think that there is any legitimate reason to be having cameras in the bathroom. And I think the fact that it was hooked on ---- What if you think your maid is stealing your oxycodone that you have for your back injury or something? Well, actually, Your Honor, I guess I read the affidavit slightly different. I think it's not saying necessarily that he uses the house as his business. It's saying that he knows that at his business he has motion detectors that have cameras. Oh, that's how I read it, too. But what that meant to me was, oh, the man also uses closed-circuit security cameras for a legitimate security reason. Well, I think another way to view it is that the juvenile had said he found motion detectors in the bathroom and then he saw the live image on the computer. And I think what the detective put that statement in about knowing that the defendant has put cameras in the motion detectors is corroboration of the inference that the motion detectors had cameras which were connected to the computer. And I think that is the explanation for why that's in there, rather than saying that it was for a security purpose. It was additional corroboration for the juvenile's statement that there were motion detectors and then there were pictures of the bathroom on the computer. It was giving an explanation that this detective knew that you could have cameras in the motion detectors and then it would explain how it was connected to the computer. And in addition to that, I think that the cousin's explanation or account of his experience is corroboration for the juvenile. And because he basically experienced the same thing eight years prior, which shows the defendant had a continuing interest in looking at juvenile male, naked juvenile males over a significant period of time. And there was clearly – it was not clear error for the Court to find he had a sexual interest in juvenile males. It was not clear error that to find that these would be captured on the computer and then that these types of images would be maintained, even putting aside the expert opinion. But I think there was sufficient probable cause without the expert opinion. But the expert opinion does add something extra just to point out the fact that people who do have a sexual interest in minors maintain these kinds of images. And if there are no other questions, the government will submit. Kennedy. I have a question which really doesn't go to the merits, but I noticed that you, Assistant Chief of the Terrorism and Organized Crime Section, is this terrorism or organized crime? No, Your Honors. However, that section not only handles terrorism, organized crime. The section also has child exploitation, gangs, and more of the violent crimes. The office took the organized crime section and the major crime sections and put them together into one unit. So we have many different areas that we handle in that section. I see. And this could have been prosecuted as a State crime? Yes. In the State, however, it is a misdemeanor. There are no felony charges for possession of child pornography in the State of California. Thank you. Thank you, Counsel. We went over time. United States v. Blumenthal is submitted.
judges: Noonan, Kleinfeld, Wardlaw